## VERHOLF v. VAN HOUWENLENGEN.

1. **Evidence: MARRIAGE.** The marriage register required to be kept by the provisions of section 2528, Revision of 1860, is sufficient to establish a marriage without other evidence showing that the person who officiated was authorized to solemnize marriages.

2. **Practice: EXCEPTION.** Where instructions are excepted to as a whole, they will not be reviewed when any one of them is admitted to be correct: Following *Shephard* v. *Brenton,* 20 Iowa, 41.

3. **Criminal conversation: CONDONATION.** Cohabitation by the husband with the wife after knowledge of her adultery operates as a forgiveness of her wrong; but constitutes no defense to an action against her seducer for damages.

*Appeal from Marion District Court.*

THURSDAY, DECEMBER 13.

CRIM. CON.—Trial and verdict for plaintiff in the sum of eight hundred dollars, and defendant appeals.

*J. E. Neal* with *J. M. Ellwood* for the appellant.

*Seevers & Williams* for the appellee.

WRIGHT, J.—I. As to the proof of marriage. The maiden name of plaintiff's wife was Nootaboom; she was married to one Prius, who died, and she afterward intermarried, as is claimed, with plaintiff. To prove this last marriage, the register required to be kept by the clerk of the County Court, by section 2528 of the Revision, was introduced, which showed the wife's name to be Nootaboom; but there was no other evidence that the person solemnizing the same, held any office authorizing him to perform said ceremony. It did appear, however, by other evidence, that the marriage was solemn-

<span style="margin-left:2em">1. EVIDENCE: marriage.</span>

ized by the person named in the return, and that the persons married were the identical parties named in said registry, and that they for several years lived and cohabited 'together as husband and wife. Defendant now insists that this evidence was improper and insufficient to prove said marriage.

The statute (§§ 2517, 2528) provides for issuing a license and for its return; that the clerk of the County Court shall keep a register containing the names of the parties, the date of the marriage, and the name of the person by whom the marriage was solemnized, *which is receivable in all courts and places as evidence of the marriage and the date thereof*. Than this declaration of the statute nothing could be clearer or more explicit. Beyond this we need not go for authority justifying the admission of the evidence, nor in proof of its materiality, relevancy and conclusiveness. It was not incumbent on plaintiff to show the official character of the officer (a justice of the peace, see § 2524), for this was properly presumed. Nor was there the semblance of error in allowing the plaintiff to show the mistake in the name of the wife in the license for the marriage and the return of the officer. The fact to be established was the marriage of these parties, and if actually married, though by other than their true or proper names, it would make no difference. And all these propositions are especially true and abundantly fortified when taken in connection with the further indisputed fact that the parties lived and cohabited together for many years afterward as husband and wife. And see 2 Greenl. Ev., §§ 463–49–50; 2 Hill. on Torts, 514; *Hemmings* v. *Smith*, 4 Doug., 32.

II. The errors assigned, based upon the instruction in chief, we do not examine, as they were excepted to as a whole; some of them are admitted to be correct, or at least no objection is urged

**2. PRACTICE: exception.,**

against them, and therefore, as we have repeatedly held, there is no question which we can review. Upon a point so often ruled it is sufficient to refer to the recent case of *Shephard* v. *Brenton* (20 Iowa, 41), an action precisely analogous to this, and the cases there cited.

III. The foregoing views dispose of the instructions in chief, those asked by plaintiff and given, certain instruc- 3. CRIM. CON.: tions asked by defendant and given with condonation. modifications (those asked by the parties relating to the proof of marriage), and we now turn to the only remaining question, arising upon certain instructions asked by defendant and refused.

At and for some time after the alleged criminal intercourse, plaintiff was absent from home in the military service of the United States. On his return and after he knew of the sin of his wife, he lived and cohabited with her, and so continued to the time of commencing this action. Defendant asked the court to instruct that the act of the husband in thus living and cohabiting with his wife was a bar to the action, and that it was *proof* of connivance and collusion. This was refused, but the jury were told that *collusion* would defeat the action; that the fact that the husband continued to live with his wife after knowledge of the adultery was a circumstance having such weight upon the question of collusion as, in their opinion, the facts of the case justified; that if, at the time of the adultery, plaintiff was absent from home, knew nothing of it, and did not collude with his wife, then the subsequent cohabitation would not bar the action, but that cohabitation under such circumstances might be considered in mitigation of damages. Stripped of all verbiage or redundancy, the simple question here presented is, whether the cohabitation, after knowledge of the adultery, is to be received as *proof* (not *evidence* simply) of collusion, or operate to defeat plaintiff's right to recover.

That *condonation* is a sufficient answer to the charge of adultery in *a divorce proceeding* is not doubted. This is defined to be *forgiveness* (of the wife or husband) with an implied condition that the injury shall not be repeated, and that the party shall be treated with conjugal kindness. 2 Greenl. Ev., § 53, and .cases cited. What is said in the succeeding section about condonation, on the part of the husband, being evidence of connivance and collusion, has reference to this class of cases, for of such is the author treating in this connection. And this must be so from the very nature of the implied forgiveness, and · the ·person in whose favor it operates. By the husband, it is forgiveness to the wife, not to the author of her defilement and the husband's loss, wrong and injury. The defendant can no more rely upon the condonation to defeat the action, even if he could, in all cases, to diminish the damages, than upon the plea of *recrimination*, or the ground that his accuser had been guilty of the same offense. See *Bromley* v. *Wallace*, 4 Esp., 237; 2 Greenl. Ev., § 56.

This position is not only reasonable and just in itself, but is sustained by the authorities. A case directly in point, is that of *Sandborn* v. *Neilson* (4 N. H. 501), in which RICHARDSON, Ch. J., says: "As to the circumstances that the plaintiff lived with his wife, after his knowledge of her want of fidelity to his bed; this may be evidence that he had forgiven *her offense*, but is clearly no evidence that he had forgiven the offense of the defendant. We are decidedly of the opinion that this circumstance could be no answer to the action." And see the cases there cited, and also 2 Hill. on Torts, 515. And, as applicable, in its reasoning, at least. *Smith* v. *Milburn*, 17 Iowa, 30. We only add that the cases cited by appellant's counsel, were *libels for divorce*, where the reason of the rule for which they contend is different, and hence their inapplicability to the case at bar. Of this

character are *Trimmings* v. *Trimmings* (3 Hag., 76); *Crewe* v. *Crewe* (Id., 123); *Phillips* v. *Phillips* (1 Robertson, 1214); *Bramwell* v. *Bramwell* (Id., 518), and indeed all the authorities upon which they rely. The rule stated by the court below, that such subsequent matrimonial cohabition was entitled to such weight upon the question of collusion as the circumstance might seem to justify, and might be considered in *mitigation of damages*, is at least as favorable to defendant as he could reasonably ask. That it would, *in every case*, go in mitigation we need not now determine.

The judgment is

Affirmed.